1  MARC J. WINTHROP– State Bar No. 63218
   mwinthrop@winthropcouchot.com
2  PETER W. LIANIDES – State Bar No. 160517
   plianides@winthropcouchot.com
3  KAVITA GUPTA – State Bar No. 138505
   kgupta@winthropcouchot.com
4  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
5  660 Newport Center Drive, Suite 400
   Newport Beach, CA 92660
6  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
7
   [Proposed] General Insolvency Counsel for
8  Debtors and Debtors-in-Possession
9
10              **UNITED STATES BANKRUPTCY COURT**
11               **CENTRAL DISTRICT OF CALIFORNIA**
12                     **SANTA ANA DIVISION**
13

| | |
|---|---|
| 14  In re:<br><br>15  ☒ PRES-LAHAINA SQUARE, LLC,<br>16    a Hawaii limited liability company<br>☒ VLJ ALOHA, LLC, a Delaware limited<br>17    liability company<br>18<br>19    Debtors and<br>    Debtors-in-Possession.<br>20<br>21<br>22<br>23<br>24<br>25 | Case No. 8:10-bk-18065 TA<br><br>Jointly Administered with<br>Case No. 8:10-bk-18067 TA<br><br>Chapter 11 Proceedings<br><br>**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF**<br><br>DATE:   July 1, 2010<br>TIME:   11:00 A.M.<br>PLACE:  Courtroom 5B<br>     411 West Fourth Street<br>     Santa Ana, CA 92701 |

26
27
28

1    PRES-Lahaina Square, LLC, a Hawaii limited liability company ("PRES"), and VLJ

2   Aloha, LLC, a Delaware limited liability company ("VLJ"), the jointly administered debtors and

3   debtors-in-possession herein (collectively "the "Debtors"), hereby move ("Motion") the Court, <u>on</u>

4   <u>an emergency basis</u>, for an order granting the following relief:

5        A)    Authorizing the Debtors, on an interim basis, to use any and all "cash

6              collateral," as that term is defined in 11 U.S.C. § 363(a), now on hand or

7              hereafter collected, in accordance with the budget ("Budget") attached as

8              Exhibit "1" to the Declaration of David A. Bonaparte ("Bonaparte

9              Declaration") appended hereto;

10       B)    Authorizing the Debtor to make expenditures in amounts not to exceed

11             115% of the aggregate amounts contained in the Budget.  Any

12             expenditures in excess of that amount will require the written approval of

13             Square One Lahaina, LLC ("Square One"), or further order of the Court

14             after appropriate notice.  Budget savings may be carried over and used by

15             the Debtors in subsequent periods;

16       C)    Finding that the interest of the Square One in the cash collateral is

17             adequately protected;

18       D)    Granting to Square One a replacement lien in the Debtors' post-petition

19             cash and accounts receivable and the proceeds thereof, to the same extent,

20             validity, and priority as any lien held by Square One as of the Petition

21             Date (defined below), to the extent cash collateral is actually used by the

22             Debtors; and

23       E)    Such further relief as the Court deems just and proper.

24       This Motion is made on the basis of the appended Bonaparte Declaration, the within

25   points and authorities, and on such other evidence as the Court elects to consider prior to or at the

26   hearing on this matter.

27       **IF YOU DO NOT OPPOSE THE RELIEF REQUESTED BY THE MOTION, YOU**

28   **NEED TAKE NO FURTHER ACTION.  HOWEVER, IF YOU OPPOSE THE MOTION,**

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

1  **OPPOSITION MUST BE FILED AND SERVED AT THE TIME OF THE HEARING ON**

2  **THE MOTION.**

3  DATED:  June 30, 2010                          **WINTHROP COUCHOT**

4                                                 **PROFESSIONAL CORPORATION**

5

6                                                 By: _____
                                                      Marc J. Winthrop
7                                                     Peter W. Lianides
                                                      Kavita Gupta
8                                                  [Proposed] General Insolvency Counsel for Debtors
                                                   and Debtors-in-Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### SUMMARY OF MOTION AND NEED FOR EMERGENCY RELIEF

4      The Debtors collectively own, as tenants-in-common, and operate a multi-tenant,

5   neighborhood shopping center located at 840 Wainee Street, Lahaina, Maui, Hawaii (the

6   "Property"). In order to maintain the value of the Property, the Debtors must have the immediate

7   ability to pay certain costs and expenses associated with the operation, and management of the

8   Property. These costs include taxes, utilities, janitorial services, repairs and maintenance and the

9   property management fees charged by the Debtor's third party, non-affiliated management

10  company, Collier Monroe Friedlander ("Collier").

11      The Property is subject to a senior lien held by Square One, which purports to secure a

12  debt in the approximate principal amount of $10.5 million. Accordingly, Square One contends

13  that the proceeds generated from the lease of the Property constitutes its "cash collateral" as that

14  term is defined in 11 U.S.C. § 363, or Square One's cash collateral.[1] In order to use this source of

15  cash to pay the ordinary and necessary expenses referenced above, the Debtors must obtain an

16  order of this Court authorizing such usage. This relief will not impair the rights of the existing

17  secured creditors. In re Princeton Square Associates, L.P., 201 B.R. 90, 96 (Bankr. S.D.N.Y.

18  1995) ("The use of the rents by a debtor in possession to maintain the property to the same extent

19  that a receiver of rents would use the rents does no economic harm to the lender."). It will merely

20  fund the ordinary and necessary costs associated with the preservation of their collateral.

21      The Debtors are seeking the foregoing relief on an expedited basis for the following

22  reasons: First, in order to preserve the value of the Property, the costs associated with the

23  maintenance and preservation of this asset must be timely paid. Second, pursuant to the lease

24  arrangements in place at the Property, the Debtors are required to pay certain costs. If the Debtors

25  fail to pay these costs, the tenants will be entitled to terminate their leases and vacate the leased

26

27  [1] The Debtors are in the process of investigating the extent, validity, priority and perfection of Square One's security
interest. Accordingly, the Debtors reserve all rights with respect thereto, and nothing contained herein or filing in

28  connection with this Motion should be construed as an admission with respect to the extent, validity, priority and
perfection of Square One's alleged security interest.

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

1  premises thereby depriving the estates of critical lease revenues. A detailed list of the expenses

2  that must be timely paid is itemized in the Budget.

3      As the request of Square One's counsel, the Debtors did not file the Motion for one week

4  so that Square One could obtain local counsel in California. Since that time, the Debtors have

5  been trying to obtain a consensual stipulation for the use of cash collateral. As the parties have

6  been unable to do so to date, the Debtors were forced to file the Motion.

7                                    **II.**

8                          **STATEMENT OF FACTS**

9      A.      **General Description of the Debtors**.

10     PRES and VLJ were each formed in 2007 to collectively own, as tenants-in-common, and

11 operate the Property. PRES-840 Wainee Street, LLC, a Hawaii limited liability company, is a

12 member and the sole manager of PRES. Vada Lee Jones, as trustee of the Vada Lee Jones Living

13 Trust dated August 20, 1999, is the sole member of VLJ. PRES' executive offices are located at

14 4300 Von Karman Avenue, Newport Beach, California 92660. VLJ's executive offices are

15 located at 9550 SW Inverness Way, Beaverton, Oregon 97007.

16     B.      **Events Precipitating Chapter 11 Filing**.

17     The Debtors purchased the Property in 2007. The severe decline in economic conditions

18 experienced both nationally and locally in late 2008, coupled with the near collapse of the national

19 credit markets in late 2008, has resulted in a downturn in construction, tourism and related

20 consumer spending in the Hawaii Islands, which, in turn, has detrimentally affected retailers who

21 are either downsizing, seeking reductions in their rent or closing their businesses. Although the

22 Debtors have made many improvements to the Property, which had been poorly maintained by its

23 prior owner, the loans matured on June 9, 2010, with a balance remaining unpaid. Prior to the

24 Petition Date (defined below), the Debtors attempted to negotiate a discounted payoff of the loans

25 and then to restructure and extend the maturity date of the loans with their senior secured creditor,

26 Square One. However, these efforts were unsuccessful.

27     Square One elected to declare a default under its loan arrangements and to pursue its

28 enforcement remedies. Specifically, on or about May 12, 2010, Square One commenced an action

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

1    in the Circuit Court of the Second Circuit in Hawaii entitled *Square One Lahaina, LLC v. PRES-*

2    *Lahaina Square, LLC, VLJ Aloha, LLC, Bradley W. Schroth, PRES Property/Asset Management*

3    *et. al* seeking judicial foreclosure and the appointment of a receiver. The hearing for the

4    appointment of a receiver was set for June 15, 2010. This forced the Debtors, PRES and VLJ, to

5    file the present Chapter 11 proceedings on June 15, 2010 (the "Petition Date") in order to obtain a

6    breathing spell within which to reorganize their affairs.

7          **C.    Operating Data.**

8          The following financial data detailing the Debtor's operations is attached to the Bonaparte

9    Declaration: (1) the Budget; and (2) Income Statement Variance Report which lists the expenses

10   for the year to date, which are attached to the Bonaparte Declaration as Exhibits "1" and "2."

11         The Budget projects the Debtors' cash needs over the next thirteen weeks. The Budget

12   was prepared on a consolidated basis because the Debtors have historically operated in this

13   manner. This projection was developed by the Debtors' management based upon current

14   operating data and management's best estimate of future cash needs. The operating results

15   detailed in the Budget establish that the Debtors generate positive earnings before interest, taxes,

16   depreciation and amortization ("EBITDA").

17         The expenses provided for in the Budget are ordinary course expenses – e.g., taxes,

18   utilities, janitorial services, repairs and maintenance and the management fees charged by the

19   Debtor's third party, non-affiliated management company - that any custodian or receiver would

20   be compelled to pay sustain the value of these assets. The Debtors' use of cash collateral for this

21   purpose is appropriate and should be authorized since it provides Square One the adequate

22   protection to which it is entitled under the Bankruptcy Code.[2] Accordingly, Square One's cash

23

24

25   [2] Not infrequently a lender will endeavor to drive a debtor out of Chapter 11 by restricting or micromanaging the use
     of cash collateral to such a degree that reorganization is impossible. This stratagem should be rejected. See In re

26   Princeton Square Associates, L.P., 201 B.R. 90, 95 (Bankr..S.D.N.Y.1996) ("Unless the court, on request of a party in
     interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." The entire

27   presumption underlying Chapter 11 is that the debtor in possession will continue to operate the debtor's business. The
     Lender would like to stand this presumption on its head by denying the Debtor in its capacity as debtor in possession

28   the ability to operate its business by preventing the use of the rents without the necessity of proving that cause for the
     appointment of a trustee exists. See Code § 1104(a).")

1    collateral pool will not be depleted through continued operations. To the contrary, this asset pool

2    will either remain stable or increase through post-petition operations.

3    **D.    The Debtor's Debt Structure.**

4        As of the Petition Date, Square One claimed the Debtors owed approximately $10.5

5    million to Square One, the successor-in-interest to Capmark Bank, a Utah Industrial Bank

6    ("Capmark"). This debt is purportedly secured by liens pursuant to deeds of trust recorded against

7    the Debtors' Property, as well as a UCC-1 filed with the Hawaii Secretary of State on or about

8    May 31, 2007 by Capmark.

9    **E.    Adequate Protection Facts.**

10       Square One is adequately protected under Section 363 for the following reasons. First, the

11   Property is well managed and generating positive EBITDA. As evidenced by the Budget, the

12   Property is generating net rents of approximately $40,000 per month. The Debtors' recent

13   operating results and future projections indicate that this trend will continue and improve over the

14   next year, providing ample adequate protection to Square One's interests. More specifically,

15   during 2009 to the present, the Debtors were able to obtain two new leases, three lease renewals

16   and a letter of intent from a prospective tenant which has increased the occupancy of the Property

17   to approximately 71%.[3] The Debtors' property manager, Colliers, is continuing to aggressively

18   market the Property to further increase the occupancy rate.

19       Second, the expenditures proposed in the Budget – e.g., taxes, utilities, janitorial services,

20   repairs and maintenance and the management fees charged by the Debtor's third party, non-

21   affiliated management company - are expenses that must be paid to preserve the value of the

22   Property, in the ordinary course of business. Accordingly, these expenditures do not deplete the

23   value of collateral securing the Loan, since they would have to be paid even if Square One

24   acquired title to the Property.

25       Third, the value of the Property has stabilized and, in fact, there is evidence that its value

26   may increase in the near future as economic conditions improve.

27

28   [3] The Property consists of approximately 50,990 square feet; of that amount, the Debtors have leased 36,350 square
feet, or approximately 71.3%.

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

1      Finally, as additional adequate protection, the Debtors will include the following provisions

2 in the cash collateral order:

3      1.     Square One will receive a replacement lien against post-petition

4     cash, accounts, receivable and inventory, and the proceeds of each of the

5     foregoing, to the same extent and priority as any duly perfected and unavoidable

6     liens in cash collateral that Square One held as of the Petition Date, limited to the

7     amount of any cash collateral of Square One as of the Petition Date and to the

8     extent that any cash collateral of Square One is actually used by the Debtors; and

9      2.     The Debtors will provide to Square One all monthly operating

10     reports required to be submitted to the Office of the United States Trustee, and

11     monthly cash flow reports, broken down by the expense line items contained in

12     the Budgets, within 15 days after the end of each monthly period after the Petition

13     Date.

14      The foregoing provisions, coupled with the value that will be preserved and generated

15 through the continued operation of the Property, will provide Square One with all the necessary

16 protection required under Section 363.

17 **III.**

18 **<u>RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS</u>**

19      In section 363(c)(3), Congress recognized that preliminary hearings on cash collateral

20 would frequently be held on an emergency basis by stating therein that such hearing "shall be

21 scheduled in accordance with the needs of the debtor". 11 U.S.C. § 363(c)(3). The courts have

22 also recognized that emergency relief on the use of cash collateral is necessary after a case is filed.

23 <u>In re Center Wholesale, Inc.</u>, 759 F. 2d 1440, 1444 (9th Cir. 1985) ("We realize that 'in certain

24 circumstances the entire reorganization effort may be thwarted if emergency relief is withheld'

25 and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at

26 the outset of the proceedings when the debtor is often without sufficient cash flow to fund

27 essential business operations.' … It is for this very reason that Congress specified that hearings

28

1    concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the

2    debtor.' "); In re Sullivan Ford Sales, 2 B.R. 350, 355 (Bankr.D.Me.1980).

3         As indicated above, in order to preserve and maintain the Property, the Debtors must have

4    the ability to pay the expenses set forth in the Budget. Without this relief, the Property will decline

5    in value, thereby damaging the interests of all creditors and this reorganization effort. On these

6    facts and circumstances, good cause exists for an expedited hearing on limited notice.

7                                        **IV.**

8    **THE USE OF THE CASH COLLATERAL SHOULD BE AUTHORIZED IN**

9    **ACCORDANCE WITH THE BUDGET ATTACHED AS EXHIBIT "1"**

10        To obtain court authorization to use cash collateral, a debtor must establish that the

11   "interest" of creditors holding liens on the subject collateral will remain "adequately protected."

12   11 U.S.C. § 363(e). Pursuant to United States v. Timbers of Inwood Forest, 484 U.S. 365, 108 S.

13   Ct 626 (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. §363(c) is

14   no more or less than the "value of the collateral" that is subject to the secured creditor's lien.

15        Under the Timbers' holding, a debtor is merely required to show that the secured creditor's

16   collateral will not decline in value under the debtor's proposed usage of cash collateral. Timbers,

17   108 S. Ct at 633; In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D.Mass. 1990) (So long

18   as the receivables being collected and used by the debtor are being replaced by sufficient new

19   receivables in which the creditor is granted a security interest, the creditor is adequately protected);

20   In re Johnson, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (Since value of the collateral has not

21   declined, the bank is not impaired and is not entitled to receive adequate protection payments); In

22   re Century Inv. Fund VII, Ltd. Partnership, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (Where

23   value appears to be stable, creditor is not entitled to adequate protection payments); In re Kessler,

24   86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under Timbers, the sellers are not entitled to adequate

25   protection payments, as there was no showing the 80-acre tract was depreciating in value); In re

26   Anderson, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (Secured creditor required to show a

27   necessity for adequate protection by showing a decline in asset value from the petition date); In re

28   McCombs Properties VI, Ltd., 88 B.R. 261 (Bankr. C.D. Cal. 1988); In re Elmore, 94 B.R. 670

1  (Bankr. C.D. Cal. 1988). Alternatively, a debtor can make an adequate protection showing even

2  where the collateral is declining in value, as long as the creditor's interest therein is protected by a

3  reasonable equity cushion.  See, In re Mellor, 734 F. 2d 1396 (9th Cir. 1984); In re Harrington &

4  Richardson, Inc., 48 B.R. 431 (Bankr. D.Mass. 1985); In re McCombs Properties VI, Ltd., 88 B.R.

5  261 (Bankr. C.D.Cal. 1988).

6       As established herein and in the Bonaparte Declaration, the cash collateral pool securing

7  the liens held by Square One will not decline through the usage proposed by herein.  To the

8  contrary, the overall value of the estates will increase through this usage, leaving Square One's

9  interest adequately protected.

10                                  V.

11                            **CONCLUSION**

12       For the foregoing reasons, the Debtors respectively request that the Court grant the relief

13  prayed for herein.

14  DATED:  June 30, 2010               **WINTHROP COUCHOT**
15                                      **PROFESSIONAL CORPORATION**

16
17  By: _Kavita Gupta_
                                        Marc J. Winthrop
18                                      Peter W. Lianides
                                        Kavita Gupta
19                                      [Proposed] General Insolvency Counsel for
                                        Debtors and Debtors-in-Possession
20

-10-

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

## DECLARATION OF DAVID A. BONAPARTE

I, David A. Bonaparte, hereby declare and state as follows:

1.      I am a member of PRES-840 Wainee Street, LLC, a Hawaii limited liability company ("PRES-840"),[4] the Manager of PRES-Lahaina Square, LLC, a California limited liability company ("PRES"). I am also an Authorized Representative of PRES Property/Asset Management, Inc., a California corporation ("PRES Property"), which was retained by PRES and VLJ Aloha, LLC, a Delaware limited liability company ("VLJ"), to manage their sole asset – a shopping center located at 840 Wainee Street, Lahaina, Maui, Hawaii (the "Property"), and maintain their books and records. Based thereon, I have been responsible for overseeing the day-to-day financial operations and financial performance of the Debtors. Consequently, I am involved in supervising all aspects of the Debtors' financial and business affairs.

2.      The facts stated herein are within my personal knowledge, or I have acquired knowledge of these facts in the ordinary course of business through my review and analysis of the Debtors' books and records.

3.      I have a B.A. in Economics from the University of California, Irvine and an M.B.A. in finance from the Yale School of Management. Prior to joining PRES-840, I was the Director of Acquisitions at CNA Enterprises ("CNA") in Century City, California where I oversaw the acquisition and sale of neighborhood retain centers and power centers located throughout the Western U.S. Prior to joining CNA, I was a Senior Associate at Douglas Emmett and worked at the Yale University Investments Office.

4.      I have been actively involved in the acquisition and management of commercial real estate investment property in the Western United States, including Hawaii, for the past twelve years. During this time frame, I have evaluated the investment potential of numerous commercial

---

[4]  Capitalized terms not otherwise defined shall have the same meaning as defined in the Motion.

real estate properties, which necessarily includes the determination of the fair market value of
such properties.

5.      PRES and VLJ were each formed in 2007 to collectively own, as tenants-in-common, and operate the Property.  PRES-840 Wainee Street, LLC, a Hawaii limited liability
company, is a member and the sole manager of PRES.  Vada Lee Jones, as trustee of the Vada Lee
Jones Living Trust dated August 20, 1999, is the sole member of VLJ.  PRES' executive offices
are located at 4300 Von Karman Avenue, Newport Beach, California 92660.  VLJ's executive
offices are located at 9550 SW Inverness Way, Beaverton, Oregon 97007.

6.      The Debtors purchased the Property in 2007.  The severe decline in economic
conditions experienced both nationally and locally in late 2008, coupled with the near collapse of
the national credit markets in late 2008, has resulted in a downturn in construction, tourism and
related consumer spending in the Hawaii Islands, which, in turn, has detrimentally affected
retailers who are either downsizing, seeking reductions in their rent or closing their businesses.
Although the Debtors have made many improvements to the Property, which had been poorly
maintained by its prior owner, the loans matured on June 9, 2010, with a balance remaining
unpaid.  Prior to the Petition Date, the Debtors attempted to negotiate a discounted payoff of the
loans and then to restructure and extend the maturity date of the loans with their senior secured
creditor, Square One Lahaina, LLC ("Square One").  However, these efforts were unsuccessful.

7.      Square One elected to declare a default under its loan arrangements and to pursue
its enforcement remedies. Specifically, on or about May 12, 2010, Square One commenced an
action in the Circuit Court of the Second Circuit in Hawaii entitled *Square One Lahaina, LLC v.
PRES-Lahaina Square, LLC, VLJ Aloha, LLC, Bradley W. Schroth, PRES Property/Asset
Management et. al* seeking judicial foreclosure and the appointment of a receiver.  The hearing for
the appointment of a receiver was set for June 15, 2010.  This forced the Debtors, PRES and VLJ,

1    to file the present Chapter 11 proceedings on June 15, 2010 (the "Petition Date") in order to obtain

2    a breathing spell within which to reorganize their affairs.

3        8.    The following financial data detailing the Debtor's operations is attached hereto:

4    (1) the Budget; and (2) Income Statement Variance Report which lists the expenses for the year to

5    date, which are attached hereto as Exhibit "1" and "2." The Budget projects the Debtors' cash

6    needs over the next thirteen weeks. The Budget was prepared on a consolidated basis because the

7
     Debtors have historically operated in this manner. This projection was developed by the Debtors'
8
9    management based upon current operating data and management's best estimate of future cash

10    needs. The operating results detailed in the Budget establish that the Debtors generate positive

11    earnings before interest, taxes, depreciation and amortization ("EBITDA").

12        9.    The expenses provided for in the Budget are ordinary course expenses – e.g., taxes,

13    utilities, janitorial services, repairs and maintenance and the management fees charged by the

14
     Debtor's third party, non-affiliated management company - that any custodian or receiver would
15
16    be compelled to pay sustain the value of these assets. The Debtors' use of cash collateral for this

17    purpose is appropriate and should be authorized since it provides Square One the adequate

18    protection to which it is entitled under the Bankruptcy Code. Accordingly, Square One's cash

19    collateral pool will not be depleted through continued operations. To the contrary, this asset pool

20    will either remain stable or increase through post-petition operations.

21
         10.    As of the Petition Date, Square One claimed the Debtors owed approximately
22
23    $10.5 million to Square One, the successor-in-interest to Capmark Bank, a Utah Industrial Bank

24    ("Capmark"). This debt is purportedly secured by liens pursuant to deeds of trust recorded against

25    the Debtors' Property, as well as a UCC-1 filed with the Hawaii Secretary of State on or about

26    May 31, 2007 by Capmark.

27

28

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

11.    The Property is well-managed and generating positive EBITDA.  As evidenced by the Budget, the Property is generating net rents of approximately $40,000 per month.  The Debtors' recent operating results and future projections indicate that this trend will continue and improve over the next year, providing ample adequate protection to Square One's interests.  More specifically, during 2009 to the present, the Debtors were able to obtain two new leases, three lease renewals and a letter of intent from a prospective tenant which has increased the occupancy of the Property to approximately 71%.[5]  The Debtors' property manager, Colliers, is continuing to aggressively market the Property to further increase the occupancy rate.

12.    The expenditures proposed in the Budget – e.g., taxes, utilities, janitorial services, repairs and maintenance and the management fees charged by the Debtor's third party, non-affiliated management company - are expenses that must be paid to preserve the value of the Property, in the ordinary course of business.  Accordingly, these expenditures do not deplete the value of collateral securing the Loan, since they would have to be paid even if Square One acquired title to the Property.

13.    The value of the Property has stabilized and, in fact, there is evidence that its value may increase in the near future as economic conditions improve.

14.    The Debtors are seeking relief on an emergency basis because in order to preserve and maintain the Property, the Debtors must have the ability to pay the expenses set forth in the Budget. Without this relief, the Property will decline in value thereby, damaging the interests of all creditors and this reorganization effort.

15.    I declare under the penalty of perjury that the foregoing is true and correct under

//

---

[5] The Property consists of approximately 50,990 square feet; of that amount, the Debtors have leased 36,350 square feet, or approximately 71.3%.

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

1   the laws of the State of California and United States of America.

2       Executed this ___th day of June 2010, in Newport Beach, California

3

4

                      David A. Bonaparte

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

## LAHAINA SQUARE SHOPPING CENTER
### JUN-SEP 2010 BUDGET

| | Week 1 14-Jun | Week 2 21-Jun | Week 3 28-Jun | Week 4 5-Jul | Week 5 12-Jul | Week 6 19-Jul | Week 7 26-Jul | Week 8 2-Aug | Week 9 9-Aug | Week 10 16-Aug | Week 11 23-Aug | Week 12 30-Aug | Week 13 6-Sep |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING BALANCE | 151,872.53 | 151,572.53 | 151,326.91 | 151,305.91 | 224,434.18 | 220,343.05 | 219,797.43 | 218,280.45 | 188,280.45 | 257,398.54 | 204,248.50 | 197,508.03 | 197,508.03 |
| **REVENUES** | | | | | | | | | | | | | |
| Scheduled Gross Income | 0.00 | 0.00 | 0.00 | 73,778.41 | 0.00 | 0.00 | 0.00 | 0.00 | 73,778.41 | 0.00 | 0.00 | 0.00 | 73,241.64 |
| Vacancy Loss | 0.00 | 0.00 | 0.00 | (22,159.20) | 0.00 | 0.00 | 0.00 | 0.00 | (22,159.20) | 0.00 | 0.00 | 0.00 | (22,159.20) |
| Percentage Rent | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| CAM/Operating Expenses | 0.00 | 0.00 | 0.00 | 26,477.24 | 0.00 | 0.00 | 0.00 | 0.00 | 27,805.78 | 0.00 | 0.00 | 0.00 | 28,798.71 |
| Other Income | 0.00 | 0.00 | 0.00 | 615.96 | 0.00 | 0.00 | 0.00 | 0.00 | 615.06 | 0.00 | 0.00 | 0.00 | 615.06 |
| Marketing & Promotion Income | 0.00 | 0.00 | 0.00 | 247.38 | 0.00 | 0.00 | 0.00 | 0.00 | 338.48 | 0.00 | 0.00 | 0.00 | 571.28 |
| Total Revenue | 0.00 | 0.00 | 0.00 | 78,959.79 | 0.00 | 0.00 | 0.00 | 0.00 | 80,378.54 | 0.00 | 0.00 | 0.00 | 81,065.26 |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| Reimbursable Expenses | | | | | | | | | | | | | |
| Taxes & Impositions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,000.00 | 802.67 | 0.00 | 0.00 |
| Utilities | 0.00 | 0.00 | 0.00 | 613.49 | 0.00 | 0.00 | 401.33 | 0.00 | 1,226.98 | 0.00 | 245.62 | 0.00 | 1,215.98 |
| Security | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Cleaning & Janitorial | 0.00 | 0.00 | 0.00 | 1,527.53 | 0.00 | 0.00 | 0.00 | 0.00 | 3,085.07 | 6,058.46 | 5,400.77 | 0.00 | 3,055.07 |
| Repairs & Maintenance | 0.00 | 0.00 | 0.00 | 1,030.91 | 0.00 | 0.00 | 969.94 | 0.00 | 1,000.91 | 0.00 | 0.00 | 0.00 | 1,030.91 |
| General Services & Grounds | 0.00 | 0.00 | 0.00 | 22.50 | 0.00 | 0.00 | 145.71 | 0.00 | 22.50 | 166.00 | 291.41 | 0.00 | 22.50 |
| Third Party Management Fees and Administration | 0.00 | 0.00 | 0.00 | 1,679.74 | 0.00 | 0.00 | 0.00 | 0.00 | 2,903.83 | 0.00 | 0.00 | 0.00 | 3,025.83 |
| Total Reimbursable Expenses | 0.00 | 0.00 | 0.00 | 4,874.18 | 0.00 | 0.00 | 1,516.98 | 0.00 | 8,235.29 | 49,224.46 | 6,740.47 | 0.00 | 8,361.29 |
| Total Non-Reimbursable Expenses | 0.00 | 546.62 | 0.00 | 473.15 | 4,091.13 | 545.62 | 0.00 | 0.00 | 625.62 | 3,925.59 | 0.00 | 0.00 | 862.42 |
| Total Operating Expenses | 0.00 | 546.62 | 0.00 | 5,347.33 | 4,091.13 | 545.62 | 1,516.98 | 0.00 | 8,868.92 | 53,150.05 | 6,740.47 | 0.00 | 9,223.72 |
| Net Operating Income | 0.00 | (546.62) | 0.00 | 73,611.76 | (4,091.13) | (545.62) | (1,516.98) | 0.00 | 71,509.62 | (53,150.05) | (6,740.47) | 0.00 | 71,841.54 |
| Reorganization Expenses | | | | | | | | | | | | | |
| U.S. Trustee Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 325.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Appraisal Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Legal Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 912.53 | 0.00 | 0.00 | 0.00 | 15,000.00 |
| Property Administrative Fees | 0.00 | 0.00 | 0.00 | 504.49 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 953.19 |
| Professional Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Net Income before Cap Expl/Cap/Amort | 0.00 | (546.62) | 0.00 | 73,107.27 | (4,091.13) | (545.62) | (1,516.98) | (30,000.00) | 70,597.09 | (53,150.05) | (6,740.47) | 0.00 | 55,888.35 |
| Capital Expenditures | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,479.00 | 0.00 | 0.00 | 0.00 | 3,960.00 |
| Cash Flow | 0.00 | (546.62) | 0.00 | 73,107.27 | (4,091.13) | (545.62) | (1,516.98) | (30,000.00) | 69,118.09 | (53,150.05) | (6,740.47) | 0.00 | 51,928.35 |
| ENDING BALANCE | 151,872.53 | 151,326.91 | 151,305.91 | 224,434.18 | 220,343.05 | 219,797.43 | 218,280.45 | 188,280.45 | 257,398.54 | 204,248.50 | 197,508.03 | 197,508.03 | 249,436.39 |

# EXHIBIT "2"

LAHAINA SQUARE
840 WA NEE STREET
LAHAINA HI 96761

INCOME STATEMENT VARIANCE REPORT - ACCRUAL BASIS
For the 5 Months Ended May 31, 2010

| | Current Actual | Current Budget | Current Variance | Percent Variance | YTD Actual | YTD Budget | YTD Variance | Percent Variance |
|---|---|---|---|---|---|---|---|---|
| **REIMBURSABLE EXPENSES** | | | | | | | | |
| **TAXES & IMPOSITIONS:** | | | | | | | | |
| REAL PROPERTY TAX | 6,134.06 | 6,287.35 | 153.29 | 2.4% | 35,160.44 | 31,436.75 | (3,723.69) | -11.8% |
| TOTAL TAXES & IMPOSITIONS | 6,134.06 | 6,287.35 | 153.29 | 2.4% | 35,160.44 | 31,436.75 | (3,723.69) | -11.8% |
| **INSURANCE:** | | | | | | | | |
| ALL RISK INSURANCE | (815.10) | 1,878.00 | 2,693.10 | 143.4% | 9,138.36 | 9,390.00 | 251.64 | 2.7% |
| TOTAL INSURANCE | (815.10) | 1,878.00 | 2,693.10 | 143.4% | 9,138.36 | 9,390.00 | 251.64 | 2.7% |
| **UTILITIES:** | | | | | | | | |
| ELECTRICITY (EXTERIOR - COMMON) | 6,928.85 | 6,058.46 | (870.39) | -14.4% | 29,703.55 | 30,292.30 | 588.75 | 1.9% |
| WATER & SEWER | 587.00 | 1,098.83 | 511.83 | 46.6% | 2,534.36 | 5,494.15 | 2,959.79 | 53.9% |
| CABLE/TELECOM | 135.36 | 128.15 | (7.21) | -5.6% | 646.14 | 640.75 | (5.39) | -0.8% |
| ELECTRICITY - TENANT SPECIFIC | 3,025.12 | 1,298.54 | (1,726.58) | -133.0% | 14,265.20 | 6,492.70 | (7,772.50) | -119.7% |
| TOTAL UTILITIES | 10,676.33 | 8,583.98 | (2,092.35) | -24.4% | 47,149.25 | 42,919.90 | (4,229.35) | -9.9% |
| **SECURITY:** | | | | | | | | |
| SECURITY STAFF/SERVICES | 983.81 | 802.67 | (181.14) | -22.6% | 4,049.79 | 4,013.35 | (36.44) | -0.9% |
| FIRE PROTECTION SYSTEMS | 0.00 | 42.00 | 42.00 | 100.0% | 658.85 | 210.00 | (448.85) | -213.7% |
| TOTAL SECURITY | 983.81 | 844.67 | (139.14) | -16.5% | 4,708.64 | 4,223.35 | (485.29) | -11.5% |
| **CLEANING:** | | | | | | | | |
| WASTE REMOVAL | 2,633.49 | 3,055.07 | 421.58 | 13.8% | 13,790.80 | 15,275.35 | 1,484.55 | 9.7% |
| CONTRACT JANITORIAL SERVICES | 3,373.67 | 3,935.59 | 561.92 | 14.3% | 16,863.31 | 19,677.95 | 2,814.64 | 14.3% |
| RESTROOM & CLEANING SUPPLIES | 1,630.07 | 245.62 | (1,384.45) | -563.7% | 2,727.55 | 1,228.10 | (1,499.45) | -122.1% |
| OTHER CLEANING EXPENSES | 1,395.91 | 0.00 | (1,395.91) | 0.0% | 1,395.91 | 0.00 | (1,395.91) | 0.0% |
| TOTAL CLEANING | 9,033.14 | 7,236.28 | (1,796.86) | -24.8% | 34,777.57 | 36,181.40 | 1,403.83 | 3.9% |
| **REPAIRS & MAINTENANCE:** | | | | | | | | |
| MAINTENANCE STAFF | 1,924.24 | 1,939.88 | 15.64 | 0.8% | 9,612.40 | 9,699.40 | 87.00 | 0.9% |
| RM PARTS & SUPPLIES | 442.03 | 1,030.91 | 588.88 | 57.1% | 12,717.69 | 5,154.55 | (7,563.14) | -146.7% |
| HVAC/MECHANICAL | 656.24 | 990.22 | 333.98 | 33.7% | 2,089.62 | 4,951.10 | 2,861.48 | 57.8% |
| PLUMBING & DRAIN SERVICES | 1,364.57 | 100.00 | (1,264.57) | -1264.6% | 1,364.57 | 500.00 | (864.57) | -172.9% |
| TOTAL REPAIRS & MAINTENANCE | 4,387.08 | 4,061.01 | (326.07) | -8.0% | 25,784.28 | 20,305.05 | (5,479.23) | -27.0% |
| **GENERAL SERVICES & GROUNDS:** | | | | | | | | |
| LANDSCAPE AND GROUNDS | 521.00 | 897.67 | 376.67 | 42.0% | 3,435.14 | 4,488.35 | 1,053.21 | 23.5% |
| PEST CONTROL | 238.34 | 156.00 | (82.34) | -52.8% | (96.86) | 780.00 | 876.86 | 112.4% |
| DIRECTORIES & SIGNAGE | 977.01 | 10.00 | (967.01) | 9670.1% | 977.01 | 50.00 | (927.01) | -1854.0% |
| KEYS/LOCKSMITH | 0.00 | 12.50 | 12.50 | 100.0% | 355.91 | 62.50 | (293.41) | -469.5% |
| OTHER GENERAL SERVICES | 284.90 | 291.41 | 6.51 | 2.2% | 1,416.94 | 1,457.05 | 40.11 | 2.8% |
| TOTAL GENERAL SVC & GROUNDS | 2,021.25 | 1,367.58 | (653.67) | -47.8% | 6,088.14 | 6,837.90 | 749.76 | 11.0% |
| **ADMINISTRATION:** | | | | | | | | |
| MANAGEMENT FEES | 2,525.90 | 2,380.80 | (145.10) | -6.1% | 12,936.46 | 11,914.62 | (1,021.84) | -8.6% |
| OTHER ADMINISTRATIVE EXPENSES | 234.31 | 500.00 | 265.69 | 53.1% | 2,557.44 | 2,500.00 | (57.44) | -2.3% |
| TOTAL ADMINISTRATION | 2,760.21 | 2,880.80 | 120.59 | 4.2% | 15,493.90 | 14,414.62 | (1,079.28) | -7.5% |
| **PARKING:** | | | | | | | | |
| TOTAL PARKING | 0.00 | 0.00 | 0.00 | 0.0% | 0.00 | 0.00 | 0.00 | 0.0% |
| TOTAL REIMBURSABLE EXPENSES | 35,180.78 | 33,139.67 | (2,041.11) | -6.2% | 178,300.58 | 165,708.97 | (12,591.61) | -7.6% |
| **NON-REIMBURSABLE EXPENSES** | | | | | | | | |
| **NR OPERATING EXPENSES** | | | | | | | | |
| N/R UTILITIES | 181.28 | 131.14 | (50.14) | -38.2% | 601.34 | 655.70 | 54.36 | 8.3% |
| NR REPAIRS & MAINTENANCE | 1,528.64 | 150.00 | (1,378.64) | -919.1% | 1,866.14 | 5,950.00 | 4,083.86 | 68.6% |
| NR ADMINISTRATIVE | 514.82 | 10.00 | (504.82) | -5048.2% | 518.82 | 50.00 | (468.82) | -937.6% |
| TOTAL NR OPERATING EXPENSES | 2,224.74 | 291.14 | (1,933.60) | -664.1% | 2,986.30 | 6,655.70 | 3,669.40 | 55.1% |

LAHAINA SQUARE
840 WAINEE STREET
LAHAINA HI 96761

INCOME STATEMENT VARIANCE REPORT - ACCRUAL BASIS
For the 5 Months Ended May 31, 2010

| | Current Actual | Current Budget | Current Variance | Percent Variance | YTD Actual | YTD Budget | YTD Variance | Percent Variance |
|---|---|---|---|---|---|---|---|---|
| **MARKETING & LEASING:** | | | | | | | | |
| ADVERTISING & PROMOTION | 0.00 | 265.76 | 265.76 | 100.0% | 0.00 | 1,328.80 | 1,328.80 | 100.0% |
| TOTAL MARKETING & LEASING | 0.00 | 265.76 | 265.76 | 100.0% | 0.00 | 1,328.80 | 1,328.80 | 100.0% |
| **BAD DEBT:** | | | | | | | | |
| TOTAL BAD DEBT | 0.00 | 0.00 | 0.00 | 0.0% | 0.00 | 0.00 | 0.00 | 0.0% |
| TOTAL NON-REIMBURSABLE EXPENSES | 2,224.74 | 556.90 | (1,667.84) | -299.5% | 2,986.30 | 7,984.50 | 4,998.20 | 62.6% |
| TOTAL OPERATING EXPENSES | 37,405.52 | 33,696.57 | (3,708.95) | -11.0% | 281,286.88 | 173,693.47 | (7,593.41) | -4.4% |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 30, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Nancy S Goldenberg   nancy.goldenberg@usdoj.gov
- Kavita Gupta   kgupta@winthropcouchot.com
- Katherine C Piper   kpiper@steptoe.com
- United States Trustee (SA)   ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop   mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On June 30, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, onJune 30, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Counsel to Secured Creditor:  Rush Moore LLP, Stephen K.C. Mau, Esq. – smau@rmhawaii.com
Counsel to Secured Creditor:  Steptoe & Johnson LLP., Katherine C. Piper, Esq. - kpiper@steptoe.com
Debtor: Pres-Lahaina – David Bonaparte – dbonaparte@presusa.com
Michael Sitzer - mikesitzer@gmail.com
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 30, 2010 | Susan Connor | |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC

**SERVICE VIA OVERNIGHT DELIVERY OR MAIL**

| | | |
|---|---|---|
| E-mail | | NEF |
| Pres-Lahaina Square LLC.<br>Attn: John W. Fitzgibbon<br>4300 Von Karman Ave.<br>Newport Beach, CA 92660 | Office of the U.S. Trustee<br>Nancy Goldenberg, Esq.<br>411 W. Fourth St., #9041<br>Santa Ana, CA 92701-4593 | Lahaina/Alpha<br>SpecialNotice&AllCreditors<br>Document No. 147822 |
| A&B Properties, Inc.<br>Attn: Lance K. Parker, VP<br>822 Bishop St.<br>Honolulu, HI 96813 | Internal Revenue Service<br>Insolvency Grp I MS 5501<br>24000 Avila Road<br>Laguna Niguel, CA 92677 | Maui Waste Services<br>Attn: Corporate Officer<br>P.O. Box 30490<br>Honolulu, HI 96820-0490 |
| ABM Family of Services<br>Attn: Corporate Officer<br>320 Hukilike, #4L<br>Kahului, HI 96732 | Internal Revenue Service<br>300 Ala Moana Blvd.<br>Honolulu, HI 96850 | National Fire Protection Co.<br>Attn: Corporate Officer<br>1906 Kahai St.<br>Honolulu, HI 96819 |
| Alexander & Baldwin, Inc.<br>Attn: Charles W. Loomis, Esq.<br>822 Bishop St.<br>Honolulu, HI 96813 | Island Lock & Safe<br>Attn: Corporate Officer<br>P.O. Box 10576<br>Lahaina, HI 96761 | Nicholas C. Dreher, Esq.<br>1000 Bishop St., #1500<br>Honolulu, HI 96813 |
| Alpha Executive Security, Inc.<br>Attn: Corporate Officer<br>P.O. Box 709<br>Haiku, HI 96708 | Jeff Wooldridge<br>P.O. Box 390247<br>Keauhou, HI 96739 | Oceanic Time Warner Cable<br>Attn: Corporate Officer<br>P.O. Box 30050<br>Honolulu, HI 96820-0050 |
| Colliers Monroe Friedlander Mgmt<br>Attn: Corporate Officer<br>P.O. Box 257<br>Honolulu, HI 96809 | Lahaina Ace Hardware<br>Attn: Corporate Officer<br>2810 Paa St., Bldg. A<br>Honolulu, HI 96819 | Orkin Pest Control<br>Attn: Corporate Officer<br>HI Adm Ctr/98-027 Hekaha St., #17<br>Aiea, HI 96701-4919 |
| Corporation Service Company<br>Attn: Corporate Officer<br>2711 Centerville Road<br>Wilmington, DE 19808 | Email<br>Law Offices of Michael F. Sitzer<br>Attn: Michael F. Sitzer, Esq.<br>761 Via Lido Nord<br>Newport Beach, CA 92663 | PRES-Kona Coast Attn: Corp Offer<br>c/o Colliers Monroe Friedlander<br>272 S. King St., #1800<br>Honolulu, HI 96813 |
| County of Maui/Dept of Wtr Supply<br>Attn: Authorized Agent<br>200 S. High St.<br>Wailuku, Maui, HI 96793-2155 | Let's Go Banners!<br>Attn: Corporate Officer<br>P.O. Box 383645<br>Waikoloa, HI 96738 | PRES-TIC Management<br>Attn: Corporate Officer<br>4300 Von Karman<br>Newport Beach, CA 92660 |
| Hawaii Building Maintenance<br>Attn: Corporate Officer<br>1001 Bishop St./ASB Twr, #955<br>Honolulu, HI 96813 | Maui Chemical & Paper Products<br>Attn: Corporate Officer<br>Wailuku Indus. Pk./875 Alua St.<br>Wailuku, HI 96793 | Rush Moore, LLP<br>Attn: Stephen K.C. Mau, Esq.<br>737 Bishop St., #2400<br>Honolulu, HI 96813 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hawaii State Tax Collector
Attn: Authorized Agent
101 Bishop St./ASB Twr, #955
Honolulu, HI 96813

Maui Electric Co.
Attn: Corporate Officer
P.O. Box 1670
Honolulu, HI 96806-1670

S.C. Plumbing, Ltd.
Attn: Managing Member
P.O. Box 12199
Lahaina, HI 96761

Square One Lahaina, LLC
Attn: Lance Parker
822 Bishop St.
Honolulu, HI 96813

Sturdevant Refrig. & Air Cond.
Attn: Corporate Officer
300 Hoohana St.
Kahului, HI 96732

Terminix
Attn: Corporate Officer
P.O. Box 742592
Cincinnati, OH 45274-2592

Stephens, Reidinger & Beller, LLP
Attn: Managing Partner
1301 Dove St., #400
Newport Beach, CA 92660

Suck Em Up Pumping
Attn: Corporate Officer
P.O. Box 880510
Pukalani, HI 96788

Wes Thomas Associates
Attn: Corporate Officer
75-5749 Kalawa St.
Kailua-Kona, HI 96740

Email

Counsel to Square One Lahaina LLC
Robbin Itkin, Esq.
Katherine C. Piper, Esq.
Steptoe & Johnson LLP
2121 Avenue of the Stars, #2800
Los Angeles, CA 90067

MAINDOCS-#148438-v1-PRES-Lahaina_CashCollateralMotion.DOC