Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

Robbin L. Itkin, Esq. (SBN 117105)
Katherine C. Piper, Esq. (SBN 222828)
Steptoe & Johnson LLP
2121 Avenue of the Stars, 28th Floor
Los Angeles, CA  90067
Ph.: (310) 734-3200 / Fax: (310) 734-3300

☐ *Individual appearing without counsel*
☒ *Attorney for:*  Square One Lahaina LLC

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re:

PRES-Lahaina Square LLC, a Hawaii limited liability company;
VLJ Aloha LLC, a Delaware limited liability company,

Debtor(s).

CHAPTER: 11

CASE NO.:  8:10-bk-18065-TA  (Jointly Administered with Case No. 8:10-bk-18067-TA)

DATE:  August 25, 2010
TIME:  10:00 a.m.
CTRM:  5B
FLOOR: 5

# NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT:  Square One Lahaina LLC )
### (Real Property)

1.  NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2.  **Hearing Location:**   ☐ **255 East Temple Street, Los Angeles**   ☒ **411 West Fourth Street, Santa Ana**

    ☐ **21041 Burbank Boulevard, Woodland Hills**   ☐ **1415 State Street, Santa Barbara**

    ☐ **3420 Twelfth Street, Riverside**

3.  a.  ☒  This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1.  If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

    b.  ☐  This Motion is being heard on SHORTENED NOTICE.  If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

       ☐ at the hearing       ☐ at least _____ court days before the hearing.

    (1)  ☐  A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

    (2)  ☐  A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

    (3)  ☐  A Motion for Order Shortening Time has been filed and remains pending.  Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4.  You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.RP**

231346.2

Motion for Relief from Stay (Real Property) - *Page 2 of 10*___                **F 4001-1M.RP**

| In re (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| PRES-Lahaina Square LLC, a Hawaii limited liability company; VLJ Aloha LLC, a Delaware limited liability company, Debtor(s). | CASE NO.: 8:10-bk-18065-TA |

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.


Dated: 8/3/10

Steptoe & Johnson LLP
_____
*Print Law Firm Name (if applicable)*


Katherine C. Piper
_____
*Print Name of Individual Movant or Attorney for Movant*

/s/ Katherine C. Piper
_____
*Signature of Individual Movant or Attorney for Movant*


_____

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                    **F 4001-1M.RP**

231346.2

**Page 2 of 238**

F 4001-1M.RP

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| PRES-Lahaina Square LLC, a Hawaii limited liability company; VLJ Aloha LLC, a Delaware limited liability company.   Debtor(s). | | CASE NO.: 8:10-bk-18065-TA |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT:  Square One Lahaina LLC                    )

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

    *Street Address:* 840 Wainee Street
    *Apartment/Suite No.:*
    *City, State, Zip Code:* Lahaina, Hawaii  96761

    Legal description or document recording number (including county of recording):

    ☒ See attached continuation page.

2. **Case History:**

    a. ☒ A voluntary ☐ An involuntary    petition under Chapter    ☐ 7  ☒ 11 ☐ 12 ☐ 13
    was filed on *(specify date)*:

    b. ☐ An Order of Conversion to Chapter    ☐ 7 ☐ 11 ☐ 12 ☐ 13
    was entered on *(specify date)*:

    c. ☐ Plan was confirmed on *(specify date)*:

    d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See attached Declaration.

3. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

    (1) ☒ Movant's interest in the Property is not adequately protected.

        (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.

        (b) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

        (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).

        (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.

    (2) ☒ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

        (a) ☒ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

        (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

        (c) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.

        (d) ☒ Other (See attached continuation page). See Memo of Law and Declaration of Lance Parker.

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    F 4001-1M.RP

231346.2

Motion for Relief from Stay (Real Property) - *Page 4 of 10*___                    **F 4001-1M.RP**

| In re | (SHORT TITLE) | | CHAPTER: 11 |
|---|---|---|---|
| PRES-Lahaina Square LLC, a Hawaii limited liability company; | | | |
| VLJ Aloha LLC, a Delaware limited liability company, | Debtor(s). | CASE NO.: 8:10-bk-18065-TA | |

    (3) ☐ *(Chapter 12 or 13 cases only)*

        (a) ☐ Postconfirmation plan payments have not been made to the Standing Trustee.

        (b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.

    (4) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

a. ☒ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

b. ☒ Other Declaration(s) are also attached in support of this Motion.

c. ☐ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____.

d. ☐ Other evidence *(specify)*:

6. ☒ **An optional Memorandum of Points and Authorities is filed with this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3. ☒ Additional provisions requested:

a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

b. ☒ That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                **F 4001-1M.RP**

231346.2

**Page 4 of 238**

Motion for Relief from Stay (Real Property) - *Page 5 of* 10    **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| PRES-Lahaina Square LLC, a Hawaii limited liability company; VLJ Aloha LLC, a Delaware limited liability company, | Debtor(s). | CASE NO.: 8:10-bk-18065-TA |

    d.  ☐  For other relief requested, see attached continuation page.

4.    If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated:  8/3/10                 Respectfully submitted,

                                    Square One Lahaina LLC
                                    *Movant Name*

                                    Steptoe & Johnson LLP
                                    *Firm Name of Attorney for Movant (if applicable)*

                          By:   /s/ Katherine C. Piper
                          *Signature*

                          Name:   Katherine C. Piper
                          *Typed Name of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 6 of* 10

**F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| PRES-Lahaina Square LLC, a Hawaii limited liability company;<br>VLJ Aloha LLC, a Delaware limited liability company, | Debtor(s). | CASE NO.: 8:10-bk-18065-TA |

# REAL PROPERTY DECLARATION

## (MOVANT: Square One Lahaina LLC )

I, Lance Parker , declare as follows:

*(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because *(specify)*:

   ☐ I am the Movant and owner of the Property.

   ☒ I manage the Property as the authorized agent for the Movant.

   ☐ I am employed by Movant as *(state title and capacity)*:

   ☒ Other *(specify)*:
   Vice President of A&B Properties, Inc., which is the manager of Square One Lahaina LLC.

2. I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. a. The address of the Property that is the subject of this Motion is:

      *Street Address:* 840 Wainee Street
      *Apartment/Suite No.:*
      *City, State, Zip Code:* Lahaina, Hawaii  96761

   b. The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as Exhibit A .

      ☐ See attached page.

4. Type of property *(check all applicable boxes)*:

   a. ☐ Debtor's(s') principal residence b. ☐ Other single family residence

   c. ☐ Multi-unit residential       d. ☒ Commercial

   e. ☐ Industrial                   f. ☐ Vacant land

   g. ☐ Other *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.RP**

231346.2

Motion for Relief from Stay (Real Property) - *Page 7 of* _10_     **F 4001-1M.RP**

| | | |
|---|---|---|
| In re     (SHORT TITLE) | | CHAPTER: 11 |
| PRES-Lahaina Square LLC, a Hawaii limited liability company;<br>VLJ Aloha LLC, a Delaware limited liability company,     Debtor(s). | | CASE NO.:  8:10-bk-18065-TA |

5. Nature of Debtor's(s') interest in the Property:

   a. ☐ Sole owner

   b. ☒ Co-owner(s) *(specify)*:  PRES-Lahaina LLC and VJL Aloha LLC collectively own the Property as tenants-in-common.

   c. ☐ Lien holder *(specify)*:

   d. ☐ Other *(specify)*:

   e. ☒ Debtor(s)  ☒ did  ☐ did not  list the Property in the Schedules filed in this case.

   f. ☐ Debtor(s) acquired the interest in the Property by  ☐ grant deed  ☐ quitclaim deed  ☐ trust deed

      The deed was recorded on:

6. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 10,461,086.72 | $ | $ 10,461,086.72 |
| b. | Accrued Interest: | $ 743,608.91 | $ 153,429.27 | $ 897,038.18 |
| c. | Late Charges | $ 16,747.11 | $ | $ 16,747.11 |
| d. | Costs (Attorney's Fees, Other Costs): | $ 11,174.00 | $ 43,244.50 | $ 54,418.50 |
| e. | Advances (Property Taxes, Insurance): | $ 27,885.96 | $ | $ 27,885.96 |
| f. | | | | |
| g. | TOTAL CLAIM as of  8/2/10          : | $ 11,260,502.70 | $ 196,673.77 | $ 11,457,176.47 |

   h. ☒ Loan is all due and payable because it matured on *(specify date)*: 1/2010 (due to acceleration)

7. Movant holds a  ☐ deed of trust  ☐ judgment lien  ☒ other *(specify)*  (1) Mortgage, Assignment of Rents and Leases,
   that encumbers the Property.  Security Agreement and Fixture Filing; (2) Assignment of Leases and Rents; (3) Hawaii UCC Financing
                         Statements; and (4) Delaware UCC Financing Statements.

   a. A true and correct copy of the document as recorded is attached as Exhibit(s)  B - E

   b. A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as
      Exhibit(s)  F - H  .

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant
      is attached as Exhibit(s)  I - L  .

8. Status of Movant's claim relating to the Property *(fill in all applicable information requested below)*:

   a. Current interest rate: 11% (default rate) / 6% (non-default rate)

   b. Contractual maturity date: 6/9/10

   c. Amount of current monthly payment:  $ N/A Loan was fully accelerated in January 2010 and is fully due.

   d. Number of PREPETITION payments that have come due and were not made:  _3*_.  Total amount: $ 329,978.79 (through 1/2010
                                    acceleration)

   e. Number of POSTPETITION payments that have come due and were not made: _____.  Total amount: $_____

   f. Date of POSTPETITION default:

   g. Last payment received on the following date: 10/09

   h. Notice of default recorded on the following date: Foreclosure suit filed 5/17/10 and Motion to appoint a receiver filed 6/1/10.

   i. Notice of sale recorded on the following date:

   j. Foreclosure sale originally scheduled for the following date:

   k. Foreclosure sale currently scheduled for the following date:

   l. Foreclosure sale already held on the following date: Receivership hearing scheduled for 6/15/10 (the Petition Date).

   m. Trustee's deed on sale already recorded on the following date:

   n. Future payments due by time of anticipated hearing date *(if applicable)*:
      An additional payment of $_____ will come due on _____, and on the _____ day of
      each month thereafter.  If the payment is not received by the _____ day of the month, a late charge of $_____ will
      be charged to the loan.

9. Attached hereto as Exhibit _M_ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the
   dates and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.
     * Due to Defaults and non-payment under the Loan Documents, the Loan was fully accelerated in January 2010. However, even if such acceleration
     had not occurred, the Loan would have fully matured on 6/9/2010.  Regardless, no payments have been made on the Loan since October 2009.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*     **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 8 of* 10

**F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| PRES-Lahaina Square LLC, a Hawaii limited liability company; VLJ Aloha LLC, a Delaware limited liability company, | Debtor(s) | CASE NO.: 8:10-bk-18065-TA |

10. ☒ *(Chapter 7 and 11 cases only)*: The fair market value of the entire Property is $ 8,490,000.00 , established by:

   a. ☒ Appraiser's declaration with appraisal attached herewith as Exhibit * Filed concurrently herewith.

   b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____.

   c. ☐ A true and correct copy of relevant portion(s) of Debtor's(s') Schedules attached as Exhibit _____.

   d. ☐ Other *(specify)*:

11. ☐ The fair market value of the Property is declining based on/due to: _____

12. ☒ **Calculation of equity in Property:**

   a. Based upon ☐ preliminary title report ☒ Debtor's(s') admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor(s) (if any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | Square One Lahaina LLC | (Unknown) | $11,457,176.48 *As of 8/2/10 |
| 2nd Deed of Trust: | | | |
| 3rd Deed of Trust: | | | |
| Judgment Liens: | | | |
| Taxes: | | | |
| Other: | | | |
| **TOTAL DEBT:** $ 11,457,176.48  * As of 8/2/10 | | | |

   b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibits B - J , and consists of:

     ☐ Preliminary title report

     ☒ Relevant portions of Debtor's(s') Schedules as filed in this case. See Schedule D attached hereto as Exhibit N.

     ☒ Other *(specify)*: See Item 7 above.

   c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $ (-2,967,176.48) (§ 362(d)(2)(A)).

   d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $ None (§ 362(d)(1)).

   e. Estimated costs of sale: $ _____ (Estimate based upon _____% of estimated gross sales price)

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:

   a. 341(a) Meeting currently scheduled for (or concluded on) the following date:
Confirmation hearing currently scheduled for (or concluded on) the following date:
Plan confirmed on the following date *(if applicable)*:

   b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| | | | | | |
|---|---|---|---|---|---|
| *(Number of)* _____ | payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ | payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ | late charge(s) at $ _____ | each | = | $ _____ |
| *(Number of)* _____ | late charge(s) at $ _____ | each | = | $ _____ |

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.RP**

231346.2

Motion for Relief from Stay (Real Property) - *Page 9 of* 10__          **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| PRES-Lahaina Square LLC, a Hawaii limited liability company; | | |
| VLJ Aloha LLC, a Delaware limited liability company, | Debtor(s). | CASE NO.: 8:10-bk-18065-TA |

c.  Postpetition/preconfirmation advances or other charges due but unpaid:        $_____
(See attachment for details of type and amount.)

**TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:**  $_____

d.  Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation *(if applicable)*:

*(Number of)* _____ payment(s) due at $_____ each  =  $_____
*(Number of)* _____ payment(s) due at $_____ each  =  $_____
*(Number of)* _____ late charge(s) at $_____ each  =  $_____
*(Number of)* _____ late charge(s) at $_____ each  =  $_____

e.  Postconfirmation advances or other charges due but unpaid:                    $_____
(See attachment for details of type and amount.)

**TOTAL POSTCONFIRMATION DELINQUENCY:**                    **$_____**

f.  ☐  The claim is provided for in the Chapter 12 or 13 Plan.  Plan payment history is attached as Exhibit_____.

g.  ☐  See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan *(attach Court Form F 4001-1M.13)*.

14.  ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15.  ☐  The court determined that the Property qualifies as single asset real estate on _____.  More than 90 days have passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time  or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

16.  ☒  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.   See Memo of Law and Supplemental Declaration of Lance Parker filed concurrently herewith.

17   ☐  The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval.  See attached continuation page for facts establishing the scheme.

b.  ☐  Multiple bankruptcy filings affecting the Property.  The multiple bankruptcy filings include the following cases:
1.  Case Name:
Case Number:                      Chapter:
Date Filed:                       Date Dismissed:                  Date Discharged:
Relief from stay re this property   ☐ was   ☐ was not  granted.
2.  Case Name:
Case Number:                      Chapter:
Date Filed:                       Date Dismissed:                  Date Discharged:
Relief from stay re this property   ☐ was   ☐ was not  granted.

3.  ☐  See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                              **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 10 of* 13__          **F 4001-1M.RP**

| In re | (SHORT TITLE) | | CHAPTER: 11 |
|---|---|---|---|
| PRES-Lahaina Square LLC, a Hawaii limited liability company; | | | |
| VLJ Aloha LLC, a Delaware limited liability company, | | Debtor(s). | CASE NO.: 8:10-bk-18065-TA |

18. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

 a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

 b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

 c. ☐ For other facts justifying annulment, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** August 3_____ , 2010__ , **at** Honolulu, Hawaii_____ *(city, state).*

Lance Parker
_____
*Print Declarant's Name*

_____
*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.RP**
231346.2

# EXHIBIT A

Loan Number: 57728

## EXHIBIT A

### Description of the Land

All of that certain parcel of land (being portion(s) of the land(s) described in and covered by Royal Patent Number 4475, Land Commission Award Number 7713, Apana 25 to V. Kamamalu, Royal Patent Number 2649, Land Commission Award Number 7587, Apana 1 to Kealoha for Timoteo Keaweiwi, Land Patent Grant Number 8664, Piece 4 to Pioneer Mill Co., Ltd., Royal Patent Number 414, Land Commission Award Number 236 H. to Halemake, Royal Patent Number 1960, Land Commission Award Number 4320, Apana 1 to Kaua, Royal Patent Number 1752, Land Commission Award Number 10968, Apana 1 to Wahie and Royal Patent Number 404, Land Commission Award Number 58, Apana 1 to Mapu) situate, lying and being at Uhao, Aki, Kopili and Lapakea, District of Lahaina, Island and County of Maui, State of Hawaii, being PARCEL "C", and thus bounded and described as per survey of Walter P. Thompson, Land Surveyor, with Walter P. Thompson, Inc., dated June 26, 1970, to-wit:

Beginning at the North corner of this parcel of land and on the Southerly side of Honoapiilani Highway, the coordinates of said point of beginning referred to Government Survey Triangulation Station "LAINA" being 6,427.01 feet South and 3,394.47 feet West and thence running by azimuths measured clockwise from true South:

| | | | | |
|---|---|---|---|---|
| 1. | 316° | 59' | 313.97 | feet along the Southerly side of Honoapiilani Highway to a pipe |
| 2. | 46° | 59' | 233.77 | feet along the remainder of R. P. 1752, L. C. Aw. 10968, Ap. 1 to Wahie to a pipe |
| 3. | 59° | 19' | 180.46 | feet along the remainder of R. P. 1752, L. C. Aw. 10968, Ap. 1 to Wahie to a pipe |
| 4. | 146° | 09'   30" | 345.63 | feet along the Northeast side of Wainee Street |
| 5. | 237° | 29' | 361.00 | feet along Parcel "B" along the remainder of R. P. 4475, L. C. Aw. 7713, Ap. 25 to V. Kamamalu to the point of beginning and containing an area of 3.016 acres, more or less. |

Together with a perpetual, non-exclusive easement for pedestrian and vehicular access purposes and for the purpose of providing utility services over, across and under Tax Map Key: (2) 4-5-06-15, as granted and more fully described in that certain Grant of Easement and Utility Easement dated May 1, 2007, recorded May 10, 2007, in the Bureau of Conveyances of the State of Hawaii as Document No. 2007-084641.

# EXHIBIT B



R-1159    STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
MAY 31, 2007    08:02 AM

Doc No(s) 2007-097959



/s/ CARL T. WATANABE
REGISTRAR OF CONVEYANCES

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
1901 Avenue Of The Stars, Suite 1800
Los Angeles, California  90067-6019
Attention:  Gerben Hoeksma, Esq.
Loan No. 57728

20    5/7    Z9

(Above space reserved for recording information)

# MORTGAGE

## ASSIGNMENT OF RENTS AND LEASES,

### SECURITY AGREEMENT
### AND
### FIXTURE FILING

#### DATED AS OF

May 30 , 2007

#### GRANTED BY

PRES-LAHAINA SQUARE LLC, a Hawaii limited liability company and VLJ ALOHA
LLC, a Delaware limited liability company, jointly and severally, as tenants-in-common

TO

CAPMARK BANK,
a Utah Industrial bank

EXHIBIT "D"

Loan Number: 57728

## MORTGAGE,
## ASSIGNMENT OF RENTS AND LEASES,
## SECURITY AGREEMENT AND FIXTURE FILING

THIS MORTGAGE, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING ("**Security Instrument**") is made as of this 30th day of May, 2007 by PRES-LAHAINA SQUARE LLC, a Hawaii limited liability company, as to an undivided 26.59% interest and VLJ ALOHA LLC, a Delaware limited liability company, as to an undivided 73.41% interest, jointly and severally, as tenants-in-common, as mortgagor (collectively "**Borrower**"), to CAPMARK BANK, a Utah Industrial bank (together with its successors and assigns, "**Lender**").

## BACKGROUND

Borrower and Lender are entering into a certain Loan Agreement of even date herewith ("**Loan Agreement**") pursuant to which Lender will make a loan ("**Loan**") to Borrower in the maximum principal amount of $13,500,000.00. The Loan will also be evidenced by Borrower's promissory notes to Lender of even date herewith; a promissory note in the original principal amount of $9,900,000.00 ("**Note A**") and a promissory note in the original principal amount of $3,600,000.00 ("**Note B**", together with Note A referred to collectively herein as the "**Note**"). Borrower desires to secure payment and performance of Borrower's obligations in respect of the Loan by granting to Lender the security described in this Security Instrument.

NOW, THEREFORE, to induce Lender to make the Loan to Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Borrower agrees as follows:

## ARTICLE 1
## DEFINED TERMS

1.01.   Defined Terms.   Capitalized terms used in this Security Instrument and not specifically defined in this Security Instrument have the meaning provided in the Loan Agreement.

## ARTICLE 2
## GRANT OF SECURITY

2.01.   Property Mortgaged.   Borrower does hereby irrevocably deed, mortgage, grant, bargain, sell, assign, pledge, warrant, transfer and convey to Lender, and to its successors and assigns as Lender, as security for the Obligations, with power of sale, the following property, rights, interests and estates, now owned or hereafter acquired by Borrower (collectively, "**Property**"):

(a)   Land.   The land described in Exhibit A attached hereto and made a part hereof, together with all estates and development rights now existing or hereafter acquired for use in connection therewith ("**Land**");

(b)   Additional Land.   All land that, from time to time, by supplemental deed or otherwise, may be expressly made subject to this Security Instrument, and all estates and

Loan Number:  57728

development rights hereafter acquired by Borrower for use in connection with such land (also, the "**Land**");

(c)    Improvements.  All buildings, structures, improvements and fixtures now or hereafter erected or located on the Land ("**Improvements**");

(d)    Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Property and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof, and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Property and every part and parcel thereof, with all appurtenances thereto;

(e)    Fixtures and Personal Property.  All machinery, equipment, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), furnishing, building supplies and materials, and all other personal property of every kind and nature whatsoever owned by Borrower (or in which Borrower has or hereafter acquires an interest) and now or hereafter located upon, or appurtenant to, the Property or used or useable in the present or future operation and occupancy of the Property, along with all accessions, replacements, betterments, or substitutions of all or any portion thereof (collectively, "**Personal Property**");

(f)    Leases and Rents.  All leases, subleases, licenses and other agreements granting others the right to use or occupy all or any part of the Property together with all restatements, renewals, extensions, amendments and supplements thereto ("**Leases**"), now existing or hereafter entered into, and whether entered before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code, and all of Borrower's right, title and interest in the Leases, including, without limitation (i) all guarantees, letters of credit and any other credit support given by any tenant or guarantor in connection therewith ("**Lease Guaranties**"), (ii) all cash, notes, or security deposited thereunder to secure the performance by the tenants of their obligations thereunder ("**Tenant Security Deposits**"), (iii) all claims and rights to the payment of damages and other claims arising from any rejection by a tenant of its Lease under the Bankruptcy Code ("**Bankruptcy Claims**"), (iv) all of the landlord's rights in casualty or condemnation proceeds of a tenant in respect of the leased premises ("**Tenant Claims**"), (v) all rents, ground rents, additional rents, revenues, termination and similar payments, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Property (collectively with the Lease Guaranties, Tenant Security Deposits, Bankruptcy Claims and Tenant Claims, "**Rents**"), whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code, (vi) all proceeds or streams of payment from the sale or other disposition of the Leases or disposition of any Rents, and (vii) the right to receive and apply the Rents to the payment of the Debt and to do all other things which Borrower or a lessor is or may become entitled to do under the Leases or with respect to the Rents;

Loan Number: 57728

(g)    Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(h)    Insurance Proceeds. All proceeds of, and any unearned premiums on, any insurance policies covering the Property, including, without limitation, the exclusive right to receive and apply the proceeds of any claim awards, judgments, or settlements made in lieu thereof, for damage to the Property;

(i)    Tax Certiorari. All refunds, rebates or credits in connection with a reduction in Taxes, including, without limitation, rebates as a result of tax certiorari or any other applications or proceedings for reduction;

(j)    Operating Agreements. All contracts (including, without limitation, service, supply, maintenance and construction contracts), registrations, franchise agreements, permits, licenses (including, without limitation, liquor licenses, if any, to the fullest extent assignable by Borrower), plans and specifications, and other agreements, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Property, or respecting any business or activity conducted by Borrower from the Property, and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, while an Event of Default remains uncured, to receive and collect any sums payable to Borrower thereunder (collectively, "**Operating Agreements**");

(k)    Rate Cap Agreements. All interest rate cap agreements, swaps or other interest hedging agreements now or hereafter executed with respect to the Loan or to guard against interest rate exposure in connection with the Loan, if any;

(l)    Intangibles. All accounts, escrows, chattel paper, claims, deposits, trade names, trademarks, service marks, logos, copyrights, books and records, goodwill, and all other general intangibles relating to or used in connection with the operation of the Property;

(m)    Accounts. All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property (including, without limitation, the Borrower Operating Account and all reserves, escrows, deposit accounts and lockbox accounts established pursuant to the Loan Agreement), together with all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property from time to time held therein, and all proceeds, products, distributions, dividends or substitutions thereon or thereof;

(n)    Rights to Conduct Legal Actions. The right, in the name and on behalf of Borrower, to commence any action or proceeding to protect the interest of Lender in the Property and to appear in and defend any action or proceeding brought with respect to the Property;

(o)    Proceeds. All proceeds and profits arising from the conversion, voluntary or involuntary, of any of the foregoing into cash (whether made in one payment or a stream of payments) and any liquidation claims applicable thereto; and

Loan Number: 57728

(p) <u>Rights</u>. Any and all other rights of Borrower in and to the items set forth in the foregoing subsections (a) through (o), inclusive, and in and to the Property.

TO HAVE AND TO HOLD the above granted and described Property unto Lender, and its successors and assigns, with power of sale in accordance with the terms and conditions hereof, forever; subject, however, to Section 2.05 below.

2.02. <u>Grant of Security Interest; Security Agreement</u>. Borrower hereby grants to Lender, as security for the Obligations, a security interest in the Property to the fullest extent that the Property now or hereafter may be subject to a security interest under the UCC. Borrower intends for this Security Instrument to be a "security agreement" within the meaning of the UCC. Borrower hereby irrevocably authorizes Lender to prepare, execute and file all initial financing statements, and any restatements, extensions, continuations, renewals or amendments thereof, in such form as Lender may require to perfect or continue the perfection of this security interest or other statutory liens held by Lender. Unless prohibited by applicable law, Borrower agrees to pay all reasonable expenses incident to the preparation, execution, filing and/or recording of any of the foregoing. With respect to any of the Property in which a security interest is not perfected by the filing of a financing statement, Borrower consents and agrees to undertake, and to cooperate fully with Lender, to perfect the security interest hereby granted to Lender in the Property. Without limiting the foregoing, if and to the extent any of the Property is held by a bailee for the benefit of Borrower, Borrower shall promptly notify Lender thereof and, if required by Lender, promptly obtain an acknowledgment from such bailee that is satisfactory to Lender and confirms that such bailee holds the Property for the benefit of Lender as secured party and shall only act upon instructions from Lender with respect to the Property.

2.03. <u>Assignment of Leases and Rents</u>.

(a) <u>Rights Granted to Lender</u>. Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents. Borrower hereby declares its intention to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and Leases and to authorize and empower Lender in the Event of Default to collect and receive all Rents and exercise all of Borrower's rights under the Leases (including, without limitation, the right to modify, extend or terminate any Lease) without any further action by Borrower; it being intended that this assignment is effective immediately and not an assignment made for security only, not withstanding any provision hereof to the contrary. For purposes of giving effect to this assignment of Rents and Leases and for no other purpose, Rents and Leases shall not be deemed to be part of the "Property" as that term is defined in Section 2.01 of this Security Instrument. If, however, this assignment of Rents and Leases is not enforceable by its terms under the laws of the State where the Property is located, then Rents and Leases shall be included as part of the Property and it is Borrower's intention that, in this circumstance, this Security Instrument creates and perfects a lien of the Rents and Leases in favor of Lender, which lien shall be effective as of the date of this Security Instrument.

(b) <u>License to Borrower; Revocation</u>. Nevertheless, subject to the terms of this Security Instrument and the Loan Agreement, Lender grants to Borrower a revocable license (i) to manage the leasing activities of the Property as contemplated by the Loan Agreement, (ii) to exercise all of Borrower's rights under the Leases and (iii) to collect and receive the Rents in trust for Lender

and to apply the Rents to discharge all current amounts due on the Debt and to pay the current costs of managing, operating and maintaining the Property. So long as no Event of Default exists, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Security Instrument. From and after the occurrence of an Event of Default, and without the necessity of notice or prior demand or Lender's entering upon and taking and maintaining control of the Property (whether directly or through a receiver), the license granted to Borrower by this Section shall terminate automatically, and Lender shall be entitled to receive and collect the Rents as they become due and payable and exercise all of Borrower's rights or the rights of lessor under the Leases and with respect to the Rent. Lender's right to revoke the license granted to Borrower is in addition to all other rights and remedies available to Lender following an Event of Default.

   (c)   No Obligations Assumed by Lender. Neither the granting of this assignment to Lender, nor Lender's exercise of any rights or remedies with respect to this assignment, shall be construed (i) to make Lender a "mortgagee in possession" of the Property in the absence of Lender itself taking actual possession of the Property or (ii) to obligate Lender to take any action with respect to the Leases, including, without limitation, the performance of any obligation to be performed on the part of Borrower under any of the Leases, which shall remain exclusively with Borrower. Without limiting the foregoing, this assignment shall not operate to place on Lender any obligation or liability for: (i) the control, care, management or repair of the Property; (ii) for carrying out any of the terms and conditions of the Leases; (iii) any waste committed on the Property by tenants or any other parties; (iv) any dangerous or defective condition of the Property (including, without limitation, the presence of any Hazardous Materials as defined in the Environmental Indemnity); or (v) any negligence in the management, upkeep, repair or control of the Property resulting in injury or death to any tenant or any other party or any loss of personal property. Borrower, for itself and any party claiming under or through Borrower, hereby releases and discharges Lender from any such liability to the fullest extent permitted by law except for liability arising solely from the gross negligence or willful misconduct of Lender. Lender shall be obligated to account only for Rents actually collected or received by Lender, and Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to lease the Property after an Event of Default.

   2.04.   Fixture Filing. Certain of the Property is or will become "fixtures" (as that term is defined in the UCC) on the Land, and this Security Instrument upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of the UCC upon such of the Property that is or will become fixtures.

   2.05.   Pledge of Monies Held. Borrower hereby pledges to Lender, as security for the Obligations, all money now or hereafter held by Lender in escrow or reserve or on deposit pursuant to the terms hereof or pursuant to the Loan Agreement or any other Loan Document, until expended or applied as provided in this Security Instrument or such other Loan Document.

   2.06.   Release of Security. The grants, mortgage, liens, security interests, assignments, pledges and transfers by this Security Instrument are subject to the express condition that, if Borrower pays to Lender the Debt at the time and in the manner provided in the Loan Agreement and performs all Obligations when and as required by the Loan Agreement and each other Loan

Loan Number: 57728

Document, Lender shall release the Property from the grants, mortgage, liens, security interests, assignments, pledges and transfers created by this Security Instrument and reconvey the Property to Borrower. Lender shall prepare (at Borrower's expense) and deliver to Borrower such documents as are necessary to effect such release and reconveyance.

## ARTICLE 3
## DEBT AND OBLIGATIONS SECURED

3.01.    Debt. This Security Instrument and the interests created in favor of Lender hereunder are given for the purpose of securing (a) payment of principal, interest and all other amounts due at anytime under the Loan Agreement, the Note and each of the other Loan Documents, including, without limitation, interest at the Default Rate, any late fee for delinquent payment, the Prohibited Prepayment Fee, the Prepayment Fee, and the Exit Fee (if any) as provided in the Loan Agreement, and amounts advanced by Lender to protect and preserve the Property and the Liens hereby created for the benefit of Lender (collectively "**Debt**"), and (b) performance of all obligations of Borrower contained in the Loan Agreement, the Note and each of the other Loan Documents (collectively with the Debt, "**Obligations**"). Notwithstanding any provision of this Security Instrument to the contrary, the obligations of Borrower and the other indemnitors under the Environmental Indemnity shall not be deemed secured by this Security Instrument unless and until Lender expressly declares in writing such obligations to be secured hereby.

## ARTICLE 4
## BORROWER COVENANTS

4.01.    Payment of Debt and Performance of Obligations.  Borrower will pay the Debt at the time and in the manner provided in the Loan Documents and fully and punctually perform the Obligations when and as required by the Loan Documents. Borrower may not prepay the Debt except in strict accordance with the Loan Agreement.

4.02.    Compliance with Loan Agreement.  Borrower shall comply with all covenants and agreements in the Loan Agreement, and other Loan Documents, including, without limitation, all obligations regarding the ownership, operation, management and condition of the Property and the protection and perfection of the Liens hereby created in favor of Lender.  Without limiting the foregoing, Borrower agrees:

(a)    No Transfers of the Property or Interests in Borrower.  Borrower shall not cause or permit any Transfer of the legal or beneficial ownership of the Property, Borrower or SPE Equity Owner in violation of the Loan Agreement.

(b)    Payment of Taxes and Other Lienable Charges.  Borrower shall pay all Taxes and Other Charges assessed or imposed against the Property when and as required by the Loan Agreement.

(c)    Insurance.  Borrower shall obtain and maintain, in full force and effect at all times, all insurance with respect to Borrower and the Property as required by the Loan Agreement.

(d)    Obligations upon Condemnation or Casualty.  Borrower shall comply with all obligations required under the Loan Agreement in the event the Property is damaged by a Casualty

or becomes involved in any Condemnation. All proceeds or awards recovered or payable to Borrower as a result of a Casualty or Condemnation shall be paid to, and administered by Lender, in accordance with the Loan Agreement.

(e)   Leases and Rents. Borrower shall not enter into any Leases for all or any portion of the Property unless in accordance with the Loan Agreement.

(f)   Operating Agreements. Borrower shall observe and perform in a timely manner each and every obligation to be observed or performed by Borrower pursuant to the terms of each Operating Agreement and shall not terminate any Operating Agreement unless otherwise permitted in accordance with the Loan Agreement.

4.03.   Warranty of Title. Borrower has good, marketable and insurable fee simple (regular system) title of record to the Property, free and clear of all liens, encumbrances and charges whatsoever except for the Permitted Encumbrances. Borrower shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Security Instrument and shall forever warrant and defend the same to Lender against the claims of all Persons whomsoever.

## ARTICLE 5
## SUBROGATION

5.01.   Subrogation. If the Loan is used to pay, satisfy, discharge, extend or renew any indebtedness secured by a pre-existing mortgage, or other lien encumbering the Property ("**Prior Lien**"), then to the extent of funds so used, Lender shall automatically, and without further action on its part, be subrogated to all rights, including lien priority, held by the holder of the indebtedness secured by the Prior Lien, whether or not the Prior Lien is released, and such former rights are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for payment of the Debt and performance of the Obligations.

## ARTICLE 6
## DEFAULT

6.01.   Events of Default. The occurrence of an "Event of Default" as that term is defined under the Loan Agreement shall constitute an "**Event of Default**" under this Security Instrument.

6.02.   Remedies. If an Event of Default occurs, Lender may, at its option, and without prior notice or demand, exercise and hereby is authorized and empowered by Borrower so to exercise, any or all of the remedies set forth in the Loan Agreement (including, without limitation, the right to accelerate the Loan) or otherwise permitted by law or in equity.

6.03.   Cumulative Remedies; No Waiver; Other Security. Lender's remedies under this Security Instrument are cumulative with the remedies provided in the other Loan Documents, by law or in equity and may be exercised independently, concurrently or successively in Lender's sole discretion and as often as occasion therefor shall arise. Lender's delay or failure to accelerate the Loan or exercise any other remedy upon the occurrence of an Event of Default shall not be deemed a waiver of such right as remedy. No partial exercise by Lender of any right or remedy will preclude further exercise thereof. Notice or demand given to Borrower in any instance will not entitle

Loan Number: 57728

Borrower to notice or demand in similar or other circumstances nor constitute Lender's waiver of its right to take any future action in any circumstance without notice or demand (except where expressly required by this Security Instrument to be given). Lender may release other security for the Debt, may release any party liable for the Debt, may grant extensions, renewals or forbearances with respect thereto, may accept a partial or past due payment or grant other indulgences, or may apply any other security held by it to payment of the Debt, in each case without prejudice to its rights under this Security Instrument and without such action being deemed an accord and satisfaction or a reinstatement of the Debt. Lender will not be deemed as a consequence of its delay or failure to act, or any forbearances granted, to have waived or be estopped from exercising any of its rights or remedies.

6.04.   Enforcement Costs.   Borrower shall pay, on written demand by Lender, all costs incurred by Lender in (a) collecting any amount payable under the Loan Documents, or (b) enforcing its rights under the Loan Documents, in each case whether or not legal proceedings are commenced. Such fees and expenses include, without limitation, reasonable fees for attorneys, paralegals, law clerks and other hired professionals, a reasonable assessment of the cost of services performed by Lender's default management staff, court fees, costs incurred in connection with pre-trial, trial and appellate level proceedings, including discovery, and costs incurred in post-judgment collection efforts or in any bankruptcy proceeding. Amounts incurred by Lender shall be added to the Debt, shall be immediately due and payable, and shall bear interest at the Default Rate from the date of disbursement until paid in full, if not paid in full within five (5) days after Lender's written demand for payment.

6.05.   Application of Proceeds.   The proceeds from disposition of the Property shall be applied by Lender to the payment of the Debt (including, without limitation, advances made by Lender and enforcement costs incurred by Lender) in such priority and proportion as Lender determines in its sole discretion.

6.06.   Continuing Lien; Right to Release Property.   If less than all of the Property is, at any time, sold through foreclosure, power of sale, or otherwise, or if Lender releases any portion of the Property (for whatever consideration Lender deems appropriate), this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property, unimpaired and without loss of priority.

6.07.   LIMITATION ON PERSONAL LIABILITY.   NOTWITHSTANDING ANY PROVISION HEREOF TO THE CONTRARY, BORROWER'S PERSONAL LIABILITY FOR PAYMENT OF THE DEBT AND PERFORMANCE OF THE OBLIGATIONS IS LIMITED HEREUNDER IN THE SAME MANNER AND TO THE SAME EXTENT AS EXPRESSLY PROVIDED IN THE LOAN AGREEMENT.

## ARTICLE 7
## WAIVER OF RIGHT OF REDEMPTION AND OTHER RIGHTS

7.01.   Waiver of Rights of Redemption, Marshalling and Other Rights.   Borrower hereby waives, to the fullest extent permitted by law, the benefit of all laws, now or hereafter in force, providing for (a) the valuation or appraisement of the Property, or any part thereof, prior to any sale or sales thereof pursuant to this Security Instrument or any decree, judgment or order of a court of

competent jurisdiction; (b) the right to stay or extend any such proceeding, to have this Security Instrument reinstated or to redeem the Property or any portion thereof so sold; (c) rights of marshalling relating to any such sale or sales; (d) any right to require that the Property be sold as separate tracts or units in connection with enforcement of this Security Instrument; and (e) the benefit of any moratorium, exemption or homestead rights now or hereafter provided. Borrower makes such waivers on its own behalf and on behalf of all parties now or hereafter claiming or having an interest (direct or indirect) by, through or under Borrower.

7.02.   <u>Waiver of Counterclaim</u>.  Borrower hereby waives, to the fullest extent permitted by law, the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of, or in any way connected with, the Obligations.

7.03.   <u>Waiver of Foreclosure Defense</u>.  Borrower hereby waives, to the fullest extent permitted by law, any defense Borrower might have by reason of Lender's failure to make any tenant or tenant of the Property a party defendant in any foreclosure instituted by Lender.

7.04.   <u>Waiver of Notices Generally</u>.  Borrower hereby waives, to the fullest extent permitted by law, its rights to notice from Lender except when this Security Instrument or the other Loan Documents expressly provides for Lender to give notice to Borrower.

7.05.   <u>Waiver of Statute of Limitations and Laches</u>.  Borrower hereby waives, to the fullest extent permitted by law, the benefit of any statute of limitations or laches defense to payment of the Debt or performance of the Obligations.

7.06.   <u>**WAIVER OF TRIAL BY JURY**</u>.  **BORROWER WAIVES ITS RIGHT, TO THE FULLEST EXTENT PERMITTED BY LAW, AND AGREES NOT TO ELECT, A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS SECURITY INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER.**

7.07.   <u>Consent to Jurisdiction</u>.  Borrower hereby consents and submits to the exclusive jurisdiction and venue of any state or federal court sitting in the county and state where the Land is located with respect to any legal action or proceeding arising with respect to this Security Instrument or any other Loan Document and waives all objections which it may have to such jurisdiction and venue. Nothing herein shall, however, preclude or prevent Lender from bringing actions against Borrower in any other jurisdiction as may be necessary to enforce or realize upon the security herein provided.

### ARTICLE 8
### <u>MISCELLANEOUS PROVISIONS</u>

8.01.   <u>Incorporation from Loan Agreement</u>.  All provisions of Articles 17 and 18, inclusive, of the Loan Agreement are incorporated into this Security Instrument by this reference, as if fully reproduced herein.

8.02.   <u>Further Acts</u>.  Borrower, at Borrower's expense, agrees to take such further actions and execute such further documents as Lender reasonably may request to carry out the intent of this

Security Instrument or to establish and protect the rights and remedies created or intended to be created in favor of Lender hereunder or to protect the value of the Property and the Liens and security hereby created in favor of Lender. Borrower agrees to pay all filing, registration or recording fees or taxes, and all expenses incident to the preparation, execution, acknowledgement or filing/recording of this Security Instrument or any such instrument of further assurance, except where prohibited by law so to do.

8.03.  <u>No Third Party Beneficiary</u>.  Notwithstanding any provision of this Security Instrument to the contrary, this Security Instrument is not intended by the parties to create, and shall not create, benefits on behalf of any tenant or other occupant of the Property or anyone claiming rights through any tenant or other occupant of the Property.

8.04.  <u>No Agency or Partnership</u>.  Nothing contained in this Security Instrument shall constitute Lender as a joint venturer, partner or agent of Borrower, or render Lender liable for any debts, obligations, acts, omissions, representations, or contracts of Borrower.

## ARTICLE 9

## <u>LOCAL LAW PROVISIONS</u>

The provisions set forth below control in the event of any conflict with the other terms of this Security Instrument.

9.01.  <u>Remedies</u>.  Upon the occurrence of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(a)    declare the entire unpaid principal balance of the Note together with all other Indebtedness to be immediately due and payable, which unpaid sums shall bear interest at the Default Rate from the due date until paid; and/or

(b)    with or without entry, institute proceedings, by judicial action, advertisement or such other statutory procedures as are available in the state where the Property is located, for the complete or partial foreclosure of this Mortgage under any applicable provision of law in which case the leasehold interest in the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner, any partial foreclosure to be subject to the continuing lien and security interest of this Security Instrument for the balance of the Indebtedness not then due, unimpaired and without loss of priority; and/or

(c)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale as provided for in Chapter 667 of the Hawaii Revised Statutes, as amended, judicial decree or otherwise, at one or more sales, as an entirety or in one or more parcels; and/or

    (d)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the other Loan Documents; and/or

    (e)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents; and/or

    (f)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Indebtedness and without regard for the solvency of Borrower, any principal or any Guarantor or of any other person, firm or other entity liable for the payment of the Indebtedness in accordance with and in the manner prescribed by applicable law in the state where the Property is located; and/or

    (g)    enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may exercise all rights and powers of Borrower with respect to the Property including, without limitation:

    (1)    the right to use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; and/or

    (2)    the right to make or complete any construction, alterations, additions, renewals, replacements and improvements to or on the Property as Lender deems advisable; and/or

    (3)    the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all rents of the Property and every part thereof;

    (h)    require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the rents, the fair and reasonable rental value for the use and occupation of such part of the Premises as may be occupied by Borrower; and/or

    (i)    require Borrower to vacate and surrender possession of the Premises to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and/or

    (j)    apply the receipts from the Premises, any Charges and interest thereon and/or any unearned Insurance Premiums paid to Lender upon the surrender of any insurance policies maintained pursuant to Section 9.03 of the Loan Agreement (it being agreed that Lender shall have the right to surrender such insurance policies upon the occurrence of an Event of Default), to the payment of the Obligations, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion; and/or

Loan Number: 57728

(k)    exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code in accordance with the terms of **Section 9.05** below, including, without limiting the generality of the foregoing:

(1)    the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral, and

(2)    request Borrower at its expense to assemble the Collateral and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Borrower. Upon any foreclosure or other sale of the Premises pursuant to the terms hereof, Lender may bid for and purchase the Premises and shall be entitled to apply all or any part of the Obligations as a credit against the purchase price.

In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Premises, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Premises unimpaired and without loss of priority.

9.02.    <u>Application of Proceeds</u>. The proceeds and avails of any disposition of the Premises, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Obligations in such priority and proportions as Lender in its discretion shall deem proper.

9.03.    <u>Right to Cure Defaults</u>. Upon the occurrence of any Event of Default, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder or curing or being deemed to have cured any default hereunder, make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Premises for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Premises or to foreclose this Security Instrument or collect the Obligations, and the cost and expense thereof (including actual attorneys' fees to the extent permitted by law), with interest as provided in this **Section 9.03**, shall constitute a portion of the Obligations and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender. All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Obligations and be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

9.04.    <u>Receiver</u>. Upon the occurrence of an Event of Default, Lender shall be entitled as a matter of right without notice and without regard to the solvency or insolvency of Borrower, or the

Loan Number: 57728

existence of waste of the Premises or adequacy of the security of the Premises, and without giving bond to apply for the appointment of a receiver in accordance with the statutes and law made and provided for who shall collect the rents, and all other income of any kind; manage the Premises so to prevent waste; execute leases within or beyond the period of receivership, pay all expenses for normal maintenance of the Premises and perform the terms of this Security Instrument and apply the rents, issues, income and profits to the costs and expenses of the receivership, including actual attorneys' fees, to the repayment of the Obligations and to the operation, maintenance and upkeep and repair of the Premises, including payment of taxes on the Premises and payments of premiums of insurance on the Premises and any other rights permitted by law. Borrower does hereby irrevocably consent to such appointment. The receiver may, to the extent permitted under applicable law, without notice, enter upon and take possession of the Premises, or any part thereof, by force, summary proceedings, ejectment or otherwise, and remove Borrower or any other person or entity and any personal property therefrom, and may hold, operate and manage the same, receive all rents, earnings, incomes, issues and proceeds and do the things the receiver finds necessary to preserve and protect the Premises, whether during pendency of foreclosure, during a redemption period, if any, or otherwise.

9.05.   Rights Under Uniform Commercial Code.   In addition to the rights available to a Lender of real property, Lender shall also have all the rights, remedies and recourse available to a secured party under the Code including the right to proceed under the provisions of the Code governing default as to any Personal Property which may be included on the Premises or which may be deemed nonrealty in a foreclosure of this Security Instrument or to proceed as to such Personal Property in accordance with the procedures and remedies available pursuant to a foreclosure of real estate.

9.06.   Right to Discontinue Proceedings.   In the event Lender shall have proceeded to invoke any right, remedy or recourse permitted under this Security Instrument and shall thereafter elect to discontinue or abandon the same for any reason, Lender shall have the unqualified right to do so and in such event Borrower and Lender shall be restored to their former positions with respect to the Obligations in which case this Security Instrument and all rights, remedies and recourse of Lender shall continue as if such action or exercise of a right had not been invoked.

9.07.   Waivers.   Borrower also waives the benefit of all laws now existing or that may hereinafter be enacted providing for (i) any appraisal before sale of any portion of the Premises, and (ii) in any way extending the time for the enforcement and collection of the Note or this Security Instrument or creating or extending a period of redemption from any sale made in collecting said debt. To the full extent Borrower may do so under applicable law, Borrower agrees that Borrower will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter enforced providing for any appraisal, evaluation, stay, extension or redemption and Borrower, to the extent permitted by law, waives and releases all rights of redemption, valuation, appraisal, stay of execution, notice of election to mature or declare due the whole of this Security Instrument and marshaling in the event of foreclosure of the liens hereby created.

Loan Number: 57728

Acceptance by Lender of any payment which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of Lender's right to demand payment of the balance due, or any other rights of Lender at that time or any subsequent time.

*[Signatures to appear on next page].*

615662.03/WLA
O3464-251/5-29-07/glvbsd

-14-

Loan Number:  57728

IN WITNESS WHEREOF, the undersigned hereby signs, seals and delivers this Security Instrument.

BORROWER:

PRES-LAHAINA SQUARE LLC,
a Hawaii limited liability company

By:   PRES-840 Wainee Street LLC,
     a Hawaii limited liability company
     Its Manager

     By: _____
          John W. Fitzgibbon
          Its Manager

VLJ ALOHA LLC,
a Delaware limited liability company

By: _____
    Vada Lee Jones as trustee of the Vada Lee
    Jones Living Trust, dated August 20, 1999
    Its  Sole Member